Good morning. May it please the Court, my name is Walter Johnson. I'm representing the petitioner Patrick Ejedawe. Let me start with the issue of jurisdiction because the Attorney General has taken the position that there's nothing to talk about here, that this Court has no jurisdiction. And as the Court must know, the Attorney General has actually taken the position that because there is no jurisdiction, there's no reason to discuss the legal or factual issues in this case, and the Attorney General has failed to discuss those in his responsive brief. The story on jurisdiction is this. Congress stripped away the Court's jurisdiction in Section 1252A2C to review orders of removal that are based on the applicant's conviction of an aggravated felony. The Attorney General says that Mr. Ejedawe was ordered removed on the basis of his conviction of an aggravated felony, and that's correct. The Attorney General says that that order is not reviewable, and we agree that that is correct. But the Attorney General then goes on to say that the Court has no jurisdiction to review a subsequent order in which the I.J. denied Mr. Ejedawe's application for withholding and his application for relief under the Convention Against Torture. We say that's wrong, and more importantly, this Court has said that that's wrong. The state of the law in this circuit is that a denial of withholding or a denial of relief under the Convention Against Torture is reviewable so long as it is based on the merits of those requests and not on the conviction for an aggravated felony, and that's the case here. Now, there are two published cases in this circuit that stand for that proposition. There's a very recent unpublished decision last month that also stands for the same proposition. The first case is Unwakalu v. Gonzalez, in which the Court said there is no jurisdictional bar over all petitions for review filed by Petitioners with an aggravated felony conviction in their past. With respect to a Petitioner's request for relief from removal, the Court still has jurisdiction to review such decisions when the I.J. does not base his denial on the aggravated felony conviction. The Court in that case went ahead and reviewed on the merits both the denial of withholding and the denial of C.A.T. relief. The Court said, quote, we reject the government's invitation to extend the jurisdiction-stripping provisions to circumstances where they do not apply. Now, as I said, we agree with the Attorney General that there is no jurisdiction to review the removal order itself, but there is certainly jurisdiction to review the denial of withholding, the denial of C.A.T. relief. The second case I want to call to the Court's attention is Morales v. Gonzalez, which was originally reported sometime last year and has been recently amended. The Attorney General has submitted a copy of that amended opinion. The amendment is a clarification. It really doesn't have any bearing on the basis on which we cited that case. That case involved a crime of moral turpitude rather than an aggravated felony. For the purposes of jurisdiction stripping, that makes no difference. It's more or less the same thing. Now, in that case, the I.J. determined that that was a crime that was, quote, unquote, particularly serious. And on that basis, the I.J. denied asylum, denied withholding, but then went on to decide the application for C.A.T. relief on the merits. The Court in Morales said we have no jurisdiction to review the asylum denial, we have no jurisdiction to review the denial of withholding except for issues of law, but we do have plenary jurisdiction to review both the facts and the law on the C.A.T. request. There's another case that I should have found this earlier. I found it last night. I've passed it on to opposing counsels. It's called Pham v. Gonzalez. It's a very brief decision and it's basically the same situation as Morales. Have you given us a copy of this case? I've given the clerk multiple copies. So that's what's up here? Pham v. Gonzalez. Pham, right. And there's nothing new about that case. What it just says is what I just said about Unwakalu and Morales. It says that if the denial of C.A.T. relief is not based on the aggravated felony, then this Court does have jurisdiction. So I – as to the rest, I'm not sure exactly what to say, because the Attorney General has not addressed any of our substantive arguments on the law or on the facts. But that doesn't deprive you from the opportunity to press your case. And I have 15 minutes to do so, and I will. Now, even if the Court were to find that there is no jurisdiction to review the facts, the Court does have jurisdiction to review questions of law and constitutional questions. Now, we haven't raised any constitutional questions, but there are several questions of law, and I'd like to go through those briefly. First of all, the I.J. Dawley committed a legal error when he basically disbelieved everything that Mr. I.J. Dawley told him, but he did not make an adverse credibility finding. The law of this Circuit is that adverse credibility findings must be expressed, and adverse credibility findings must be based on a specific cogent reason for any stated disbelief. What the I.J. did in this case was to say, Mr. I.J. Dawley, you're a convicted felon. Why should I believe anything that you say? I really don't believe anything that you say. Well, it was a little broader than that, but why doesn't Rule 609 inform our decision in this case? Prior felony convictions involving moral turpitude are universally admissible to address the credibility of people, and that's what it seems that we have going on in this case. I mean, you've got a client who's been convicted of multiple counts of fraud. That relates to his credibility. This case is so different from your usual credibility case, because this is a person who's lived a total life of fraud and appears to be a professional crook who sneaks into the United States to steal things while he's working for banks. So this is a different case. And the I.J. simply says, looking at this whole record, you know, given what I see about you coming from the record, you know, I'm warning you right now that why should I believe anything you say? It doesn't strike me as all that unusual. Well, I agree. 609 in an ordinary sort of proceeding is... Does 609 not apply in this proceeding? It applies. The evidence of the prior criminal convictions are certainly relevant. To? To. For fraud. I believe the conviction was for possession of ATM cards. Yeah, but crimes of moral turpitude. Theft. It was – well, yes. Essentially, it is theft. I mean, whatever... Whatever label you put on it, I would agree that it was theft. And Mr. Ejidawi has done his time, by the way. Nevertheless, priors are admissible on credibility. All right. Admissible and relevant to credibility. But in this particular kind of hearing, the finding of credibility has to be based on something that has a legitimate nexus with the testimony about persecution and torture. I don't think so. All the time in courts, prior felony convictions are used to destroy people's credibility. No. I mean, the priors come from something completely different. Here, however, it comes right out of the immigration context. I don't believe it comes right out of the immigration context, Your Honor, because it has to do with prior felony convictions. It has nothing to do with whether he will be persecuted if he's returned to Nigeria or if he will be tortured if he's returned to Nigeria. Counsel, what do you want us to do? Good question. What are you asking us to do? Well, what I'm asking you to do is what I stated at the end of the opening brief, and that is, Mr. Ejidawi's testimony, because there wasn't a legitimate finding of that he was not credible, must be believed. And on that, on the basis of that testimony, what I'm asking this Court to do is grant the relief that the I.J. did not grant him. There is law in this circuit to the effect that if the I.J. has already decided the case on the merits, there is no need to send it back to the I.J. for further proceedings. The I.J. has already made a decision in this case, and that the proper thing for this Well, you know, you say that there's no... Counsel. Go ahead, Judge Schroeder. Well, it seems to me that the most that you have here is a technically deficient credibility finding. And the most that you're entitled to here is to have it go back for a further determination of credibility or whatever else should be determined. I don't see quite how you make the leap that we have to accept on this record his testimony is true, given all of his background of being a liar and a person, a perpetrator of fraud. Well, Your Honor, that's not what I gather from the decisions of this Court. What the Court has said in the past is that some, that the determination of adverse, the adverse credibility determination has to be based on a legitimate nexus to the finding. Well, let me read to you from page 124. And what is this? While the Respondent's stories do seem to be consistent in many aspects, the Court recognizes this is an individual who commits bank fraud, who enters the United States admittedly by using false passports, refuses to identify himself to officials when he's safe from Nigerian officials, and that, of course, while he was in the United States, again engages in fraud on several other occasions. Thus, for any rational person, the Respondent's credibility would be placed into issue. What is that? You can regard that as an adverse credibility finding, but that adverse credibility finding, and this is a separate issue, that adverse credibility finding doesn't have a legitimate nexus to the claim. The claim is I'm going to be thrown in jail, beat up, and tortured if I'm sent back to Nigeria. That's the claim. But then the IJ says, and all of this relates to whether or not you've carried your burden. You're simply not a believable person, period, based on this entire, your entire record. And that strikes me as a credibility finding based on, among other things, the evidence in 609. It's a credibility finding, but it has nothing to do with, I mean, the only evidence in this case was Mr. Ejidawi's testimony and the corroborating documentary evidence that he submitted. He doesn't believe the guy's story, period. He has the burden of establishing the case, and the IJ is saying, based on everything that I see in the record here, you haven't carried your burden. But here's the problem. You haven't met the burden of showing that it's more likely than not, et cetera, et cetera. But here's the problem. The IJ said that that Mr. Ejidawi's story was consistent. It certainly is plausible. Consistent, but not at all believable. But what was the point of the hearing? He consistently told a false story, is what the IJ says. Then what was the point of the hearing? The IJ at the beginning of the hearing said, Mr. Ejidawi, why should I believe anything you say?  You have the hearing. He might have been able to convince him. He didn't. But this Court has said a general belief that the applicant is not a truthful person is not sufficient in these circumstances. But this is more than just a general belief, isn't it? I mean, this is a belief based on he was charged with a theft offense that was dismissed. He was convicted of over a million dollars' worth of theft offense. He was then convicted of a second theft offense. He was deported. He came back into the United States. He never alerted the authorities. He came back with a false passport. That's more than just a general lack of credibility, isn't it? I mean, I think that's fairly serious, a fairly serious credibility problem. I'm not going to argue against common sense. I mean, what you are saying does make sense. Mr. Ejidawi is a convicted felon. He did come back into the United States on a false passport. There are certainly cases in this circuit, many cases in this circuit that say coming back into the country on a false passport is not necessarily a strike against him. Yeah, but this is like the burglar getting caught in the house for the third time who says he's just looking for a tuna fish sandwich. Counsel, are you arguing that under our circuit law, if as long as the Respondent is consistent, that he must be believed, even if he's a consistent liar? What I'm saying is that under the law of this circuit, the reason for disbelieving the applicant has to be based on his story, on his claim about why he is entitled to relief. It can't be based on something that's collateral to that. And there are cases in this circuit to that effect, that they cannot be based on a general finding that this is not a truthful person. It has to be based on a finding that something in his claim is false. The I.J. didn't make any such finding. He just said this is not a believable guy. So no matter how consistent and plausible and well corroborated his story is, I'm not going to believe him. But our standard of review is whether or not the BIA's decision was supported by substantial evidence, right? Well, that is a standard. I'm saying that the standard that the I.J. made an error of law in that he made an error of law in that he made an adverse credibility determination that was based on something collateral to the claim, and you can't do that. You've got about three minutes left. I'd like to listen to the other side and reserve that time. Thank you. Your bet. Good morning, and may it please the Court. There's no dispute here that the Petitioner, that his three fraud-related convictions are aggravated felonies within the immigration laws that render him removable, and there's no dispute that the immigration judge entered a final order of removal based on the Petitioner having an aggravated felony conviction. And the only dispute that the Petitioner is really raising here are all fact-based disputes that are not subject to judicial review. Have you read this Pham case that we got this morning? I just had it drawn, yes. And what do you think it holds and requires us to do on this issue? On this issue, I think it doesn't require anything, first of all, because it's not precedent. And second, I think Pham follows Morales, but we have a different view of the statement that Pham is relying on in the Morales case. In Morales, this Court held that there were questions of law relating to the torture convention and relating to the particularly serious crime determination. And it said it was following this Court's decision in Unakalu. And in Unakalu, this Court said that there were two conditions that had to be met for this Court to have jurisdiction. First, that the immigration judge's removal order was not based on an aggravated felony conviction. And second, that the denial of relief was not based on an aggravated felony conviction. As Petitioner just admitted and as this brief admits, his reply brief at pages 1 and 3, there's no dispute that the final order of removal here is based on an aggravated felony conviction. And so I think viewed properly, the statement of Morales that Pham relies on is properly viewed as dicta. And I think in addition to that, it's properly viewed as dicta because the language of the statute itself requires there's no judicial review for final orders of removal when the alien is removable by reason of an aggravated felony conviction. Now, Petitioner has argued that while he doesn't challenge that this Court cannot review the final order of removal, he's asking this Court to review a separate and independent order. But I think that's incorrect for at least two and maybe three different reasons. First, a final order of removal, like a final decision or a final judgment from a district court, incorporates all the subsidiary or collateral orders in a case. It can't be that you just review one order that says removal but not the underlying or related orders. Second, the orders here are related. There's no dispute that the final order of removal in the immigration judge's decision refers to expressly the DHS final administrative order of removal, which is indisputably based on the petitioner having an aggravated felony conviction. And third, and with good reason, this Court has consolidated all the petitions for review in this case because they all relate to the same thing, whether this petitioner, this criminal alien who's committed multiple acts of fraud, is removable. So with respect, I don't think counsel's argument about this being a separate order outside the final order of removal bar in Section 1252A2C is well-founded. Well, the case that was given to us this morning says thus, even assuming that the jurisdiction stripping provisions under Section 1252A2C apply, we retain jurisdiction to review a CAT claim unless the IJ relied on the underlying conviction in denying CAT relief. Did the IJ here rely on the underlying conviction in denying CAT relief? No, he didn't. No, he did not. No, he did not. But, again, as I was just saying, I think Morales, a non-presidential opinion, is incorrect in following what is non-binding dicta from the Morales case, when Morales says if there are questions, it holds that there are questions of the law. And, of course, 1252A2D expressly says this Court has jurisdiction over questions of the law. On what basis in the case that we're talking about here today did the IJ deny CAT relief? He denied it on the merits. On the merits. So why don't we move to the merits, then? We'll take under consideration your objection to the jurisdiction. Thank you, Your Honor. And with respect, I do submit the government should have an opportunity to address the merits because this Court has indicated in recent case law that if the government addresses jurisdictional-type arguments and, in the alternative, the merits of a case. You know, I just told you you can go ahead with the merits. I'm sorry. You don't have to tell us we're right. Go ahead. Thank you, Your Honor. Even assuming this Court has jurisdiction, there's nothing about this record that compels a contrary conclusion, the extremely deferential standard of review as to any of the findings that the immigration judge reached. You've heard the other side tell us that if the story itself is consistent and there's nothing internally or externally inconsistent about the story, we're bound to accept the credibility of the story. Your answer to that is what? That is incorrect, Your Honor, not only because, as this Court pointed out, that under Rule 609A2, which is more restrictive because it applies in federal court where the rules of evidence are more restringent than in an administrative forum, but also under this Court's case law, a prior felony conviction relating to fraud is proper grounds for finding an applicant that lacks credibility. And here the applicant, and that case, by the way, is in Unakalu. In Unakalu, a Nigerian applicant had one credit card fraud conviction. In that case, the immigration judge said, in her opinion, you already had a credibility problem because of that credit card fraud conviction. Here we're dealing with a criminal alien who has three fraud-related convictions in which the loss of harm, as Judge Benitez pointed out, was over $1 million in one instance. And as the record shows, the intended loss of harm as to the second set of convictions was $2.4 million. So I disagree with counsel that that is irrelevant or doesn't go to the heart of a petitioner's claim. It goes right to the heart of everything he says and whether it is or is not true. And to be sure, the immigration judge, as you read from his opinion, pointed out several other reasons for undermining this applicant's testimony as lacking credibility. He came into the United States on a fraudulent passport. He lied to immigration officials and didn't say anything about persecution or wanting withholding of removal until after he committed more acts of fraud, after he was convicted for those acts of fraud, and after he was put into removal proceedings for the second time. And counsel is incorrect in saying that this Court has a flat rule against pointing towards a fraudulent passport as an erroneous basis for making a credibility determination. And CAR, I think it's K-A-U-R, this Court did not lay down a flat-out prohibition against citing to that. I just said an immigration judge should consider all the circumstances relating to that use of a fraudulent passport. And here I submit the immigration judge indisputably did that, pointing towards the petitioner's multiple acts of fraud, his multiple convictions of fraud, and his not saying anything about wanting withholding relief until after he's put in proceedings a second time. And to be sure, he must have known about that relief because when he was deported or removed the first time back in the year 2000-2001, he asked for withholding and removal relief. So there's nothing about this record that compels a contrary result as to credibility. And the same goes for the immigration judge's alternative holdings as to the lack of causation and the absence of sufficient harm that would meet the extreme concept of persecution and, as Petitioner describes it, the even more extreme concept of torture. As to causation, Petitioner's brief admits at pages 36 and 37 of his opening brief that obviously corrupt government officials, bribery, extortion, was a motive for what he described the Nigerian police doing to him. Obviously that was a motive. He just wants you to substitute your judgment for the immigration judge's and say, but it wasn't the sole motive. And to be sure, the petitioner here testified that when he paid a bribe, that's when he was released. That's when he was let go by the police. So there's nothing about this record that compels a contrary conclusion, the extremely deferential standard of review, as to causation. And the record also shows, by the way, the petitioner testified about four murders that had taken place and about how he observed this crowd watching these bodies who had been murdered. They weren't members of his tribe. They were people, as he said, from the Sudan, not from his tribe. So that has nothing to do with his causation argument. And as to harm, there's nothing about this record that compels an opposite conclusion as to the immigration judge's alternative holding as to harm either, because despite everything the petitioner cites through in his brief, from the credible fear interview and so on, which is irrelevant, the immigration judge conducts a de novo review, the petitioner admitted in his testimony that he got beat up a little bit. And under this Court's precedent in Hoxa v. Ashcroft and Prasad v. INS, this Court said that where it's undisputed, unlike here, where somebody had been detained a few days and beaten to the point where they had not only bruises but even broken ribs, that did not compel a finding of persecution, to meet the extreme concept of persecution. And here we have a petitioner who says not only that I got beat up a little bit, but on that same page, not cited by the petitioner in his brief, he says, I didn't need medical treatment either. So Hoxa v. Ashcroft, Prasad v. INS, these are the cases that also preclude the petitioner's argument as to harm. Do you have any other points? Last, Your Honor, the argument, the one argument that petitioner does have, that this Court does have jurisdiction over the nationality claim should also be dismissed to the extent it hasn't been waived because there's no genuine issue of material fact that the petitioner's naturalization application was denied. And under this Court's decision in Perdomo Padilla, you cannot be a U.S. national unless you were born here or born in a U.S. territory or had a granted naturalization application. And I note, by the way, petitioner admitted in his first round of deportation proceedings, back in the year 2000-2001, that he was a Nigerian citizen, that he was a Nigerian national, and that he was not a U.S. citizen or national. That's in the record of AR 1, page 52. Thank you very much. Thank you, counsel. You may reply. Thank you. Let me just say a couple of words about the facts, because ---- How about the nationality point before I forget? The nationality point? The last point. Mr. Ejidawe understands that under the law of this circuit, he's not going to win on his nationality claim. He wants to preserve that issue. Okay. Thank you. On the facts, I just heard counsel say that Mr. Ejidawe's testimony was that he got beat up a little bit. Mr. Ejidawe's testimony actually was that when he got off the plane in Lagos when he was deported, he was thrown in jail for approximately eight days, that he was beaten with fists, he was kicked, his hands were handcuffed behind his back, and he was beaten on a daily basis with a horse whip. That's not getting beaten up a little bit. His ---- Did he also say he wasn't ---- he didn't need any medical treatment? There was no medical treatment. I don't believe there's anything on the record that said he didn't need any medical treatment, but no medical treatment was available. No food was available. He was relying on a friend of his to bring in food. I'm not absolutely certain that he said he didn't need medical treatment, but he did file a police report after he got out of jail saying that he was suffering from the injuries from having been beaten when he was in jail. That, by the way, is perfectly consistent with the U.K. Home Office reports, with all of which say this is typical of behavior, typical of treatment of prisoners in Nigeria. So I think in terms of just does he have a reasonable fear of persecution, does he have a reasonable fear of torture? He does, very much so. And the torture claim has no ---- it doesn't matter what the motive of the torturer is, whether it's extortion or not, as long as it's torture, it doesn't matter what the motive is. Question. Okay. So they beat you up a little bit. Answer, yes. All right. Did you have to get any medical treatment? Answer, there was no medical treatment. I understand there was no medical treatment there, but were you released? How much later were you released? About a week later. Yes, I was released about a week later. Well, I don't see anything about no medical treatment after that. All right. Okay. If I could make a few quick points before my time is up. On jurisdiction, let me just read something from the Morales v. Gonzalez case, and this is a quotation on the CAT relief. Quote, as to our resolution of factual issues, when an I.J. does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the merits hearing in this case on May 12th, correct? Pardon me? There was a merits hearing in this case on May 12th? A merits hearing? A hearing on the merits before the immigration judge? Yes. Yes, I believe that was the date. Okay. To answer Judge Schroeder's earlier question, there is a case called Carr v. Ashcraft, which we cited on page 14 of our reply brief, which says, when an I.J. fails to make an explicit adverse credibility determination, the petitioner's testimony must be taken, must be accepted as credible. Lastly, there is a case called Marcos v. Gonzalez that says, the general propensity to tell the truth would not, an I.J.'s finding about the applicant's general propensity to tell the truth would not provide the specific cogent and substantial reasons that we require to support an adverse credibility finding. That's on page 16 of our reply brief, and there are other cases to that effect. So your concern is that the immigration judge did not utter the magic words of making a finding, a factual finding of a lack of credibility in this case? That's one thing. Notwithstanding the fact that the evidence before the immigration judge may have very well established to the immigration judge and perhaps to others that this was not a credible individual. But that did not go to the heart of his claim. I know. We heard that before. Okay. Thank you. So you're part of the CAP? No, I'm not. You're not. No, I'm in private practice with Nixon Peabody. I took this on the Ninth Circuit's pro bono. And I thank you for that. We appreciate your help. Oh, well, I'm glad to do it. You're quite welcome. And I have a question for you. You can come back up for a second. I'm just trying to track down what you said. I thought you said that he said he didn't need any medical treatment. Yeah, I understood, Your Honor. At AR2, I think it's 176, I understood his response to be agreeing with the immigration judge, the immigration judge's question that he did not need or did not have medical treatment. Well, I thought I heard you say he said he didn't need medical treatment. I'm sorry if I said it that way. I understood his testimony to be to that effect. He says, so they beat you up, all right? Did you have to get any medical treatment? There was no medical treatment. Question, I understand there was no medical treatment there, but you were released. And then there's nothing else about medical treatment that I can find. I understood him to be agreeing with the immigration judge that when he said that there was no When he asked him, did you need medical treatment, I understood him to say, this is my reading of the record. No, there was no medical treatment. There was no medical treatment there. Okay. Thank you, counsel.  Thank you, Your Honor.
judges: Schroeder, Trott, Benitez